UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2015 MAY -4  P 4: 22

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.       ) | No. 1:15-cr- 68-01-JL |
| ) | |
| RYAN JOHNSON ) | |

## INFORMATION

The United States Attorney charges:

### GENERAL ALLEGATIONS

1. At all times relevant to this Information, the United States Food and Drug Administration ("FDA") was the agency of the United States responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.* The FDA's primary purpose in enforcing the provisions of the FDCA was to protect the public health. The FDA's responsibilities included regulating the manufacturing, labeling, and distribution of drugs shipped or received in interstate commerce. The responsibilities of the FDA included preventing drugs that were unapproved for marketing or sale, or which were improperly packaged and labeled, from reaching the marketplace.

2. Under the FDCA, drugs were defined as, among other things, articles (other than food) intended to affect the structure of any function of the body of man or other animals or articles intended for use as components of others drug. 21 U.S.C. § 321(g)(1)(C)&(D).

3. Under the FDCA, the term "label" was defined to include "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). The term "labeling" was defined as all labels and other printed or graphic matter upon any article or any of its containers or wrappers, or accompanying such article. *See* 21 U.S.C. § 321(m).

4. A drug was misbranded if, among other things:

   a. its labeling was false or misleading in any particular. *See* 21 U.S.C. § 352(a).

   b. the drug was in package form and did not bear a label containing the name and place of business of the manufacturer, packer, or distributor. *See* 21 U.S.C. § 352(b).

   c. the labeling on the drug did not bear adequate directions for use. *See* 21 U.S.C. § 352(f)(1). Unless subject to an exemption not applicable here, a drug must bear adequate directions for use under which a layperson can use the drug safely for the purposes for which it is intended. *See* 21 C.F.R. § 201.5.

   d. the labeling on the drug did not bear such adequate warnings against use in those pathological conditions and by children where its use may be dangerous to health, and against unsafe dosage and methods and duration of administration and application, in such manner and form, as were necessary for the protection of users. *See* 21 U.S.C. § 352(f)(2).

5. XLR11 became a Schedule I controlled substance on or about May 16, 2013.

6. AB-FUBINACA became a Schedule I controlled substance on or about February 10, 2014.

## COUNT ONE

[Conspiracy to Introduce Misbranded Drugs Into Interstate Commerce –18 U.S.C. § 371]

7. The allegations in paragraphs 1 to 6 of this Information are incorporated herein.

8. Beginning on an unknown date in 2013, through at least on or about March 28, 2014, in the District of New Hampshire and elsewhere, Defendant RYAN JOHNSON did knowingly and intentionally conspire with other persons known and unknown, to cause the introduction of misbranded drugs into interstate commerce with the intent to defraud or mislead, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

<u>Manner and Means</u>

9. Defendant RYAN JOHNSON and others, known and unknown, were engaged in a business enterprise involving the sale of drugs, as that term is defined by Title 21 United States Code, Section 321(g)(1)(C), in the form of synthetic cannabinoid products.

10. Defendant RYAN JOHNSON and others, known and unknown, obtained quantities of components of their synthetic cannabinoid products, including leafy substances, XLR11, and AB-FUBINACA from sources outside of New Hampshire.

11. Defendant RYAN JOHNSON and others, known and unknown, mixed the leafy substances with XLR11 and AB-FUBINACA at a location in Epping, New Hampshire to manufacture synthetic cannabinoid products.

12. Some of these synthetic cannabinoid products were packaged with labels that falsely and misleadingly represented the contents to be "potpourri," "sachet," "incense," and other erroneous names, and indicated that the products were "not for human consumption," "not for consumption," and "for aromatherapy use only," when in fact such products were drugs were

3

intended for human consumption. Product labels also falsely and misleadingly stated that the product did not contain "any illegal synthetic cannabinoids or any product banned by any state or federal law," or that the product was "DEA compliant."

13. Each of the synthetic cannabinoid products manufactured by Defendant RYAN JOHNSON and others, known and unknown, was misbranded in at least one of the following respects:

    a. The drugs' labeling did not bear adequate directions for use;

    b. The drugs' labeling was false and misleading in at least one particular;

    c. The drugs' packaging did not bear a label containing the name and place of the business of the manufacturer, packer, or distributor; and

    d. The drugs' labeling did not include adequate warnings against the drugs' use where such use might be dangerous to one's health, or warnings against unsafe dosages, methods, or durations of administration or application, in such manner and form as were necessary for the protection of users of the drugs.

14. Defendant RYAN JOHNSON and others, known and unknown, intended to mislead government authorities regarding the products' status as drugs, with the purpose of avoiding regulation over the drugs and enabling themselves to continue to profit from the sales of these products.

15. Defendant RYAN JOHNSON and others, known and unknown, intended to mislead consumers regarding the legal status of the synthetic cannabinoid products, the contents of the packages, and the safety of the synthetic cannabinoid products in order to continue to

profit from the sales of these products.

16. Defendant RYAN JOHNSON and others, known and unknown, arranged for these misbranded drugs to be transported across state lines for delivery to customers in Massachusetts and elsewhere.

17. Defendant RYAN JOHNSON and others, known and unknown, were aware that customers smoked or otherwise ingested the synthetic cannabinoid products in order to affect the structure or any function of the body (*i.e.*, to "get high.").

## Overt Acts

18. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the District of New Hampshire and elsewhere:

   a. On an unknown date, Defendant RYAN JOHNSON agreed to store chemicals and other items used in the manufacture of synthetic cannabinoids at his residence in Epping, New Hampshire.

   b. On various dates, co-conspirators delivered quantities of chemicals, leaves, acetone, and other items to Defendant RYAN JOHNSON's residence in Epping, New Hampshire.

   c. On various dates, Defendant RYAN JOHNSON manufactured synthetic cannabinoid products at his residence in Epping, New Hampshire.

   d. On various dates, Defendant RYAN JOHNSON accepted thousands of dollars in payments from a co-conspirator for manufacturing synthetic cannabinoid products.

  e.  On various dates, co-conspirators, known and unknown, took the synthetic cannabinoid products from the Epping location and transported them to a location in Massachusetts, where the products were packaged for distribution.

  f.  On or about March 6, 2014, Defendant RYAN JOHNSON accepted a payment of $4,000.00 for his assistance in manufacturing synthetic cannabinoid products.

  g.  On or about March 27, 2014, Defendant RYAN JOHNSON and other co-conspirators, known and unknown, prepared 15-kilogram bags of synthetic cannabinoid products that would be sold to customers in bulk form.

  h.  On or about March 28, 2014, Defendant RYAN JOHNSON possessed quantities of bulk synthetic cannabinoids, packaged synthetic cannabinoids, and empty packages for synthetic cannabinoids at his residence in Epping, New Hampshire.

All in violation of Title 18, United States Code, Section 371.

                DONALD FEITH
                Acting United States Attorney

                _____
                John J. Farley
                Assistant U.S. Attorney

Dated: May 4, 2015